KNOXVILLE IRON COMPANY v. FRANK DOBSON.

1. MASTER AND SERVANT. The obligations existing between master and servant do not exist between employer and contractor. An employer is not liable to others for injuries resulting from the negligence of a contractor, although the employer may have known that the contractor was of bad character.

2. SAME. Whether a person in the performance of work for another is a servant or contractor, depends upon whether he represents the will of his principal in the management and details of the work.

3. SAME. A master is not liable to one servant for the negligence or want of skill of a fellow-servant, unless there was a want of due care in selecting the fellow-servant, or unless the master retained him in his employment after knowledge of his careless habits or want of skill.

4. SAME. The rule is the same, although the negligence or want of skill of the fellow-servant relates to the ordinary repair of the master's machinery, by which the plaintiff was injured.

---

FROM KNOX.

---

Appeal in error from the Circuit Court of Knox county. S. A. RODGERS, J.

ANDREWS & THORNBURG for Iron Company.

HENDERSON & JOUROLMON and HOUK & GIBSON for Dodson.

MCFARLAND, J., delivered the opinion of the court.

This action was brought by Dobson to recover damages for personal injuries. The declaration in substance avers that the plaintiff was the employee and servant

of the defendant in a nail factory, and while acting as such, received the injuries by reason of the negligence, carelessness and want of skill of the superintendent and other servants of the defendant who had authority over the plaintiff, and by reason of the defendant's machinery being improperly constructed, defective and in bad repair. There was a trial upon the issue of not guilty, which resulted in a verdict in favor of the plaintiff, assessing his damages at $2,500. A motion for a new trial was overruled and judgment rendered upon the verdict. The defendant below took a bill of exceptions and appealed in error.

The proof shows that the defendant was the owner and proprietor of a rolling mill and nail factory in the city of Knoxville, and that plaintiff—at the time, a boy of about fourteen years of age—was acting as a "feeder" to one of the nail machines while in operation, when the knife or knives broke, the pieces were thrown out by the great velocity of the machine, and struck the plaintiff, causing the loss of one of his eyes. The ground of the plaintiff's recovery, as indicated by the record, was the defect in the knives of the machine, caused by the negligence of certain of the employees of the company in tempering them too highly and suffering them to be used in this condition, thereby causing them to break. There is no evidence of any other defect in the machinery or of want of skill and care upon the part of the company's other servants, except in respect to the knives.

The defense was placed upon several grounds: 1. It was contended that the plaintiff was not the

employee or servant of the defendant, but of one A. P. Williams, who, as *contractor* under the defendant, had charge of the machine in question, and had employed the plaintiff as *his* servant. 2. That the accident resulted not from any defect or improper tempering of the knives, but from the plaintiff's own negligence in thrusting the nippers into the machine. And 3. That if the knives were improperly tempered, it was from the negligence of a "fellow-servant" engaged in a common employment, for which the company was not liable.

Upon the first ground of defense indicated, the defendant introduced proof tending to establish the following state of facts, viz: That the company had in their factory a number of nail machines, part of which it was operating by hands employed and controlled by its superintendent; that the company had a contract with said A. P. Williams, by which he was to have charge of five of the company's nail machines, and other necessary tools, and the company was to furnish the power to run the machines, the plates out of which the nails were to be cut, ready prepared for the purpose, and Williams was to have entire charge of said five machines, see that they were kept in proper repair, hire, control and pay his own hands, and receive from the company so much per keg for the nails so manufactured; that the company had no control over Williams or his hands, except to give orders as to the quality of nails wanted and keep an account of the same; that at the time of the accident, the plaintiff was in the employ of Williams upon one of

24—VOL. 7.

the five machines and was not in the employ or pay of the company.

This state of facts on the other hand was denied by the plaintiff, and it was insisted that both the plaintiff and Williams were servants of the company. There was, furthermore, controversy as to the person upon whom the duty devolved of tempering the knives, or of seeing that they were properly tempered, both under the arrangement with Williams and in accordance with the usual course of business. It was, furthermore, a disputed question as to who in fact tempered the knives last before the accident. The knives have to be sharpened at short intervals when in use, and as they are heated for this purpose, have to be re-tempered.

The first question we shall consider, arises upon the charge of the trial judge upon the above theory of the defense. All the portions of his charge bearing upon this question are as follows, to-wit: "If a person employs others not as servants but as mechanics or contractors, in an independent business, and they are of good character, if there was no want of due care in selecting them, he incurs no liability for injuries resulting to others from their negligence or want of skill. The proper test in this kind of a case is, whether the party by whose negligence the injury was occasioned, was an employee or servant of the master and subject to his general control, or was a mechanic or contractor in an independent business and not under his control. In the former case the master is liable, in the latter he is not." Again: " If you should

find from the proof the plaintiff was not in the employment of the defendant, but of the nailer, A. P. Williams, and that said Williams was not an employee of the defendant, but a mechanic or contractor in an independent business and not under the control of the defendant, then you could not find for the plaintiff. But should you find from the proof that said Williams was a contractor under the defendant to carry on a department of the work of the defendant, and subject to its control, and while so employed, through his negligence the plaintiff received the injuries sustained, without negligence upon the part of the plaintiff, you should find for the plaintiff."

The above charge contains passages which, if taken alone, would be free from objection, but as a whole it is incorrect.

It is now, we believe, well settled that "a contractor" is not the servant of his employer, and that the latter is not responsible to third persons for the negligence of the former, or the negligence of his servants, agents or sub-contractors in the execution of his work: See Sherman & Redfield on Negligence, sec. 79; *King* v. *The New York C. & H. R. R. Co.* (66 New York), 23 Amer. Reports, 37; *McCarthy* v. *Second Parish of Portland,* Supreme Court of Maine, reported in 11th vol. of the Reporter, p. 703; *Cunningham* v. *International R. R. Co.* (51 Texas), 32 Amer. Reports, 632.

And so the charge as above quoted concedes. But the proposition is qualified in these words: " If a person employs others not as servants but as mechanics

or contractors in an independent business, *and they are of good character and there was no want of due care in selecting them,* he incurs no liability for injuries resulting to others from their negligence or want of skill." Now this clearly implies that if a person employs "a contractor" to perform a piece of work and the contractor is not of good character, and there *was* want of due care in selecting him, the employer will be held liable to third parties for any injury that may result to them from the contractor's negligence or want of skill. This proposition is erroneous. "In general, where one person has sustained injuries from the negligence of another, he must proceed against him by whose negligence the injury was occasioned. If, however, the negligence which caused the injury was that of a servant while engaged in his master's business, the person injured may disregard the immediate offender and hold the master responsible. But the doctrine of *respondeat superior* only applies where the relation of master and servant exists. It does not attach to the relation of employer and 'contractor,' and the former is not responsible for the negligence of the latter, and the character of the contractor and the care or want of care in selecting him upon the part of the employer is, ordinarily, immaterial. If one employ a 'contractor' to build a house, and the latter employ others to assist him as his servants, it is inconceivable that the employer shall, on account of the contractor's bad character, be liable to his servants for injuries which they may receive from his negligence": 23 Am. Reports, 38, 39.

Where the relation of master and servant exists, and the servant is injured by the negligence of a "fellow-servant," the master will be liable if he knowingly or carelessly employed or retained the incompetent and careless "fellow-servant" and put him in a position to do the injury. His Honor seems to have applied this doctrine to the employment of a contractor, but it has no application. Between one who employs a contractor and the servant of the latter there is no connection or relation whatever—no more obligation than exists between strangers. Again : The important question upon this theory of the defense was, whether the facts insisted upon by the defendant constituted Williams a "contractor," or only a servant of the defendant. The real objection to the charge in this last respect is, that it should perhaps have been more explicit and directly applicable to the facts as insisted upon by the defendant.

The jury were correctly told that if Williams was a contractor in an independent business and not under the control of defendant, the latter would not be liable to others for his negligence. The question was, what facts would constitute Williams a contractor in "an independent business," and especially what would be the result if the state of facts insisted upon by the defendant be established. Whether he was a contractor or a servant, was a mixed question of law and fact.

The definition of a contractor, as given in Sherman & Redfield on Negligence, is, "a person who, in the pursuit of an independent business, undertakes to do specific jobs of work for other persons, without sub-

mitting himself to their control in respect to the petty details of the work." The true test, it is said, "is to ascertain whether one who renders the service, does so in the course of an independent occupation, representing the will of his employer only as to the result of his work and not as to the means by which it is accomplished": See sec. 76. "If he submits himself to the direction of his employer as to the details of the work, fulfilling his will not merely as to the result but also as to the means by which that result is to be attained, the contractor becomes a servant in respect of that work": Sec. 77; *King* v. *The New York C. & H. R. Railroad Co.* (66 New York) 23 Am. Rep., 37. See also *Cunningham* v. *International R. R.* (51 Texas) 32 Am. Rep., 632.

Applying these principles to the facts of this case, the jury should be instructed that if Williams contracted with the defendant to make nails at a certain price per keg, the company furnishing the machines and tools, the motive power and materials, and Williams employing his own hands and having control of the machines, hands and all the details of the work, and was not subject to the control of the company or its agents except as to the results of the work, then he was not the company's servant but "a contractor." But if, on the other hand, Williams remained subject to the company, through its superintendent or other officer, in the general conduct of his business and the details of the work, the management of the machines, etc., then he was the company's servant, notwithstanding he hired the hands and was paid for the nails by

the keg. In this latter view, though in form a con-
tractor, he would in reality be but a servant. While
the charge is not so explicit as it should have been
on this point, yet if it were otherwise free from ob-
jection, we do not say that we would, on this ground
alone, disturb the judgment.

The remaining portion of the charge relates to the
plaintiff's theory of the case, that is to say, upon the
assumption that the relation of master and servant *did*
exist between the plaintiff and defendant. In the first
place, the jury were told that it was the duty of the
employer to furnish "good machinery as to model and
perfect of the kind, properly tested by the ordinary
and proper tests to ascertain its sufficiency and safety
when employed and put in use, and to see that it is
always, while in use, kept in perfect repair, so far as
that can be done by the application of the proper
attention and skill."

The first part of this proposition, we take it, was
intended to follow our own cases of *N. & C. Railroad*
v. *Elliott*, 1 Cold., 617, and *N. & D. Railroad Co.* v.
*Jones*, 9 Heis., 27, holding in substance that it is the
duty of the employer to furnish good machinery, free
from such defects as may be discovered by the appli-
cation of the usual and ordinary tests. The modifica-
tion of the rule in the last named case, that is to say,
where the machinery is purchased from a manufacturer,
and the defects might have been discovered by the
latter, but not by the purchaser, is not important to
be considered, as the facts of this case do not raise
the question. The charge, as thus understood, is free

from objection. That portion of the proposition which requires the employer "to keep the machinery in perfect repair so far as it can be done by the application of proper attention and skill," we will consider hereafter. His Honor proceeds: "The master also undertakes to not expose the servant to any risk by associating him with other employees wanting in ordinary skill and care, and the servant on his part undertakes to run all the ordinary risks of the service which he undertakes." On this subject he adds in another place, that "a master is not liable for an injury to a servant occasioned by the negligence of a fellow-servant of the same grade in the employment. But he is liable for an injury occasioned by the negligent acts of an employee in a superior and different position. If a master carry on the different departments of his service by superintendents of departments, the superintendents represent the master and their acts in the line of their employment are his acts."

That part of his Honor's language above set forth, to-wit, "that the master undertakes to not expose the servant to any risk by associating him with other servants wanting in ordinary skill and care," is quoted substantially from the opinion of Judge McKinney in *N. & C. R. R. Co.* v. *Elliott*, 1 Cold., 617. But this remark of Judge McKinney was made as a qualification of the general rule that a master is not liable for injuries resulting to a servant from the negligence of a fellow-servant engaged in a common employment, and it is manifest that he did not undertake to state the qualification fully and accurately. The rule es-

tablished by the authorities is that if the injury result from the negligence of a fellow-servant engaged in a common employment, the master is not liable unless he failed to exercise care in selecting a competent servant in the first instance, or retained such servant after he had obtained knowledge of his want of skill or careless habits. If the master use due care and diligence in these respects, he is not liable to one servant for the negligent acts of another while engaged in a common employment: *Mobile & M. R. R. Co.* v. *Smith*, Sup. Ct. of Ala., 6 Reporter, 264; *Blake* v. *R. R. Co.*, Sup. Ct. of Maine, 10 Reporter, 426; *Quincy Mining Co.* v. *Kitts*, Sup. Ct. of Michigan, 9 Reporter, 86; *Jones* v. *Granite Mills* (126 Mass.) 30 Am. R., 661; *McAndrews* v. *Burns*, New Jersey Court of Appeals, 5 Reporter, 120; *Harnathy* v. *Northern Central R. R. Co.*, Court of Appeals of Maryland, 5 Reporter, 698. The clause of the charge last referred to is, therefore, inaccurate, and the inaccuracy seems not to be fully cured in the other portions of the charge.

We have in this State modified the general rule in regard to the liability of a master for the negligence of a " fellow-servant," in those cases where the two servants are engaged in different departments of work, or, in other words, we have held that a section hand on a railroad several hundred miles in length, is not a fellow-servant in a common employment with a conductor and engineer of a train: *Carroll* v. *The Railroads*, 6 Heis., 347. We also hold to the doctrine that a servant who is in a position of authority over

the other servants so as to compel their obedience, is not in the sense of the rule a fellow-servant in a common employment, but represents the master, who is in general liable for his negligence.    These qualifications, while not conceded by all the authorities, or even perhaps by the weight of authority, are recognized with us.    The charge is in substantial accord with our cases in the last named particulars.

The charge seems to imply that a failure to keep the machinery in perfect repair—that is, as applied to the facts of this case, to keep the knives properly tempered—would render the company liable for any injury that resulted, notwithstanding such failure was the negligence of one who stood in the relation of fellow-servant to the plaintiff.    The authorities seem to be otherwise:  See *Smith* v. *Lowell Man. Co.*, Sup. Ct. of Mass., 5 Legal Rep., 397;  *Harnathy* v. *Northern C. Railway Co.*, Court of Appeals of Maryland, 5 Rep., 698;  *Sones* v. *Granite Mills* (126 Mass.) 30 Am. Rep., 30.  Of course we express no opinion as to whether the tempering of the knives was in fact by a fellow-servant.

For the errors indicated the judgment must be reversed and a new trial granted.

Reversed.

TURNEY, J.:

I dissent from so much of the opinion as holds that one whose duty it is to temper the knives and

---

---

keep them in proper repair, is the fellow-servant of him who merely places the metal in the machinery for the purpose of cutting the nails. The one duty is a matter of skill, the other simply mechanical, requiring no skill.