RIDGEWAY LAND CO., et al. v. T. M. VINCENT, et al.

Eastern Section. February 11, 1928.

Petition for Certiorari denied by Supreme Court, April 25, 1928.

Cantrell, Meacham & Moon, of Chattanooga, for appellant.
Chas. S. Coffey, of Chattanooga, for appellee.

SENTER, J. The parties will be referred to in .this opinion as in the court below, i. e., Thomas M. Vincent and wife, Grace Vincent, as plaintiffs, and The Ridgeway Land Co., and Hamilton county, as defendants.

Plaintiff sued both defendants in the circuit court of Hamilton county to recover for damage alleged to have resulted ʲto their property situated in Hamilton county, from the .acts of the defendants in collecting and diverting water from rainfalls from its natural course and causing same to run over, badly wash and overflow the property on which they then lived, badly damaging the lot and a concrete retaining wall, the grass, shrubbery, and a hedge planted on said lot. The declaration avers that during the year 1925 the defendants, through their agents and employees, reconstructed and repaired Cherokee avenue along the rear of plaintiffs' property, and also repaired and reconstructed Ridgeway avenue. That the property is located in what is known as "Ridgeway Addition," or subdivision. Both defendants file pleas of not guilty.

The case was tried before the Circuit Judge and a jury, and resulted in .a judgment in favor of plaintiff and against the defendant Ridgeway Land Co., in the sum of $600. The trial judge granted the motion of defendant, Hamilton county, for a directed verdict in its favor. A motion for a new trial made by the defendant Ridgeway Land Co. was overruled, and from the action of the court in over-ruling its motion for a new trial and rendering the judgment for $600, and the costs of the cause, the defendant Ridgeway Land Co. prayed and was granted an appeal to this court. The appeal was duly perfected, and errors assigned.

By the first assignment of error appellant contends that (a) there is no evidence to sustain the verdict; (b) because the work which is complained of was done by an independent contractor, and there was nothing dangerous in the nature of the work; (c) because the roads were county district roads; (d) there were heavy rains in the fall of 1925 and early in 1926; (e) the work had been done about a year

before any trouble from surface water was experienced. By the second assignment of error the action of the court in refusing to grant the special request of defendant to instruct the jury as follows, is challenged:

> "If the defendant had this work done by a competent independent contractor, and said work was done by such contractor without supervision of defendant, then the defendant would not be liable in this case."

The third assignment of error is directed to the action of the court in overruling the fifth ground of the motion for a new trial. This is practically a repetition of the first and second assignments of error. The fourth assignment of error is directed to the following portion of the general charge:

> "Now, it is not a question of whether or not this company negligently did that work there. It is just a question of did they do it. This case don't depend on negligence. It is just a question of fact. Did they do this work? And did they do it in such a way as to collect this water in larger quantities than had been previously collected? Or, did they divert the usual amount of water so as to throw it over the plaintiff's land and cause it to flow there when it had not flowed there before? If they did this, and the plaintiff's lot was damaged; their wall washed out, their shrubbery destroyed, clay and debris deposited on their lot, they would be entitled to recover of defendant such damages as they have sustained, and that would cover the damages accruing to them within one year next before the bringing of their suit, because this suit was predicated upon recurring conditions, recurring damages."

By the fifth assignment it is said that the court erred in the following portion of the general charge:

> "Now, the defendant insists that while it did this work nothing it did there caused any more water to be collected, nothing it did there caused the water to be diverted across the plaintiff's lot, any more than had previously been caused to flow over there by the conditions existing before it undertook to improve this property, these streets."

It appears from the record that the Ridgeway Land Co., which was the owner of a subdivision, and still owned a number of unsold lots in the subdivision, desired to reconstruct, or to repair and improve certain of the streets in the subdivision, and which were laid out, and shown on the plat. This property was not within the city limits of Chattanooga, but appears to be suburban property, or a subdivision near the City of Chattanooga in Hamilton county. It appears that there is a stipulation in the record to the effect that the Ridgeway Land Co. is a corporation, and that Cherokee avenue

and Ridgeway avenue were both created district roads by the action of the county court of Hamilton county, at the October Term, 1915. It also appears that the offices of the Ridgeway Land Co. sought to have the County Judge of Hamilton county grade and improve these streets or roads, but the County Judge declined to have the work done by the county, or at the expense of the county. Whereupon, the defendant Ridgeway Land Co. arranged to have this reconstruction or repairing of the road or street in question at its expense. It appears that Mr. S. H. Strauss was, at the time the work was done, connected with the Hamilton National Bank, at Chattanooga, and that the Hamilton National Bank was interested in the Ridgeway Land Co. Mr. Strauss stated that he was serving as the representative of the Ridgeway Land Co., and that the bank advanced the money to the land company, or loaned it the money, to do this work. He states that representing the Ridgeway Land Co. he procured a Mr. Sam Henderson to superintend the work of improving these streets. He states that the work was done under the supervision of Henderson, and that Henderson was paid $5 or $6 per day for his services, and that the pay roll for the labor was paid to Henderson. We think it clear from the record that Henderson was not an independent contractor. He was employed by the day to superintend the work of repairing these streets or roads for the land company. He was at all times subject to the control and direction of said land company. Mr. Strauss, the agent and representative of the land company, showed Mr. Henderson the portions of the streets or roads in question to be reconstructed or repaired, and instructed Mr. Henderson to have the work done as cheaply as he could, but to put the streets in good condition for travel. It is not shown who employed the laborers, but it does appear that at the end of each week Henderson turned in to Strauss the pay roll for the labor and the amount of the pay roll was turned over to Henderson. This pay roll included his own salary or wages of $5 or $6 per day. It appears that Henderson had been a road commissioner for Hamilton county. He was not a road engineer, but had had experience in road work. The extent of his experience is not shown by the record.

Appellant has cited numerous authorities in support of its contention that where the owner lets work or improvements to an independent contractor, who is capable, and where the nature of the work is not of a dangerous character, the owner is not liable for damages resulting to third parties. (Iron Co. v. Dodson, 75 Tenn., 367; Powell v. Construction Co., 88 Tenn., 691; Davis v. Lbr. Co., 126 Tenn., 575; Grant v. Railway, 129 Tenn., 405; Cash v. Casey-Edges, 139 Tenn., 179, 39 C. J., 1324.)

We do not think that the facts connected with the employment by the defendant of Mr. Henderson bring his employment within

the rule of an independent contractor. We think that his relation was that of agent and employee of the defendant. Mr. Strauss testified that he was the only representative of the Ridgeway Land Co. who was handling that transaction. He was asked and answered as follows:

"Q. Now, just what did you tell Mr. Henderson you wanted done? A. Well, he and I went out together, and drove from 43rd street to the top of the hill. The old road bed could be travelled but it was very unsafe. I told him I wanted him to put it in shape to be travelled with as little expense as possible as to shaping it up, grading, etc. I knew nothing about that, and for him to use his best judgment.

"Q. Was it specified about how wide the road was to be opened? A. No.

"Q. Was it specified as to how large drainage tile were to be used? A. No, sir.

"Q. Or where it was to be placed? A. No.

This witness had stated on this subject in his examination in chief, as follows:

"Q. Please state, Mr. Strauss, whether any specifications were prepared and furnished the contractor for the building of those roads? A. No, sir.

"Q. Did you have a written contract with him? A. No, sir.

"Q. What instructions were given him? A. Mr. Henderson and I went out and looked the situation over and the old roads which had been laid out a great many years before were partially overgrown and washed out in places, and I told him about what I wanted to put them in travelable shape, and I entered into a contract with him to do the work by the day, and I was to pay him a certain sum, $5 or $6 a day for his supervision, and he turned in his pay roll to me each week, and I paid him, a verbal contract.

"Q. The matter of the construction of the road then was just left up to Mr. Henderson's judgment? A. Entirely to Mr. Henderson."

It is true that Mr. Strauss testified on cross-examination, as follows:

"Q. In other words, Mr. Henderson was an independent contractor? A. Yes, sir."

This statement by the witness was merely a conclusion, it was a question of law, under the evidence.

We think what the witness meant to say was that he employed for the land company, Mr. Henderson to supervise the work, and that the witness, not having any knowledge of that character of work, left its supervision to the judgment of Henderson. This court recently decided the case of Gulf Refining Co. of La., plaintiff in error, v. Huffman and Weakley, defendants in error, which involved the

construction of the contract between the Gulf Refining Co., and J. U. Overall. In that case it appeared that Overall was the representative of the Gulf Refining Co. of La., in Dyer county. Overall furnished all the equipment, including tank trucks, etc., and made all the sales to filling stations, and made all deliveries. He received a profit or a commission for all sales and deliveries made in the county, and paid all expenses incident to making the sales and deliveries. While making a delivery of gasoline at a country store with filling station, the gasoline tank truck caught fire, and the driver of the truck who was in the employ of Overall, and charged with making the deliveries, negligently permitted the gasoline tank truck to catch fire, and negligently failed to remove the burning truck to a safe distance from the storehouse, and the fire was communicated to the storehouse. The owner of the storehouse sued the Gulf Refining Co. The case turned solely on the question as to whether Overall was the agent of the oil company, or whether he was an independent contractor. This court, after reviewing the authorities on the question, held that Overall was the agent of the Refining Co., and not an independent contractor. The opinion of the Court of Appeals was affirmed on certiorari by the Supreme Court. A well considered case involving this question in Uppington v. New York, reported and annotated in 53 L. R. A., 155. The cases are numerous involving this question, but essentially each case must be determined by the facts. It is but a matter of applying recognized rules to the facts. We think the learned trial judge was not in error in refusing the special request referred to under the second assignment of error. There was no dispute or controversy as to the nature and character of the employment of Henderson. It was therefore a question of law for the court as to whether under these facts the relation was that of employee and agent, or of independent contractor. We are also of the opinion that the court was not in error in giving in charge that portion of the charge complained of under the fifth assignment of error. What we have said with reference to the second assignment of error is equally applicable to the fifth assignment. The trial judge construed that the relation between Henderson and the land company was that of agent and employee, and with that construction of the evidence, and the undisputed evidence, he stated that it was the insistence of the land company that nothing it did there caused any more water to be collected, and that nothing it did caused the water to be diverted across the complainant's lot. While it is true that the defendant insisted that this work was done by an independent contractor, but it admitted that it procured Henderson to do this work, or to supervise the work, and all the evidence on that subject is to the same effect. If the court was not in error in holding that Henderson was the agent and employee of the defendant land company, and as above

pointed out, we think he was not in error in so holding, then the portion of the charge complained of under the fifth assignment of error is not subject to the criticism made by appellant.

We think it clear under the evidence that the damage to plaintiff's property was the result of the improper and defective construction and repairing of the streets by the defendant. The small ten-inch pipe placed under and across the street was too small to carry the water, and was not properly located to best serve the purpose. We are also of the opinion that there was abundant evidence to support the verdict of the jury that the very serious damage to plaintiff's property was due to the improper construction and repairing of the street so as to cause the water to accumulate and flow across plaintiff's lot. Plaintiffs had experienced no trouble by water damage from rainfalls during all the years that they had owned and occupied this property until after these streets had been reconstructed and repaired, defectively, by defendant land company.

On the question of the excessive rainfall occurring at the time the retaining wall was washed out, and the other damage to the property occurred, the court charged the jury as follows:

"Then, the defendant further contends in this case that the drainage which is provided for and the manner in which it did this work, was sufficient to carry the ordinary rainfall, and such as would be ordinarily expected in that vicinity and community, and it insists that the rains that damaged plaintiff's property were extraordinary, out of the ordinary, heavy rains, gulley washers. The court instructs you that in doing work of this kind, a county or a municipality, or this defendant, if it undertook to do it, is not bound to anticipate extraordinary rainfalls, extraordinary conditions. All it would be bound to do would be to provide for the ordinary rains. Now, if the facts are that this was an extraordinary rain, or these three rains of which the plaintiff complains were extraordinary, why the defendant would not be liable for that, if in doing the work it had provided conditions to take care of the ordinary rainfall, such as ordinarily would be expected."

This portion of the charge fully covers the contention made by the defendant land company that the rain which caused the damage to plaintiff's lot, was an unusually heavy rainfall, out of the ordinary, and such as not to be reasonably expected or anticipated.

These questions were all properly submitted to the jury and there was evidence to support the verdict of the jury.

Without referring further to the assignments of error, we are of the opinion that they are not well taken. It results that the judgment of the lower court is affirmed. Appellant and sureties on the appeal bond will pay the costs of this appeal.

Owen and Heiskell, JJ., concur.