# LOUIS URMANN v. CITY OF NASHVILLE and JOHN GILBERT. —311 S. W. (2d) 618.

Middle Section. July 26, 1957.

Certiorari denied by Supreme Court February 6, 1958.

Jack Norman, Nashville, for plaintiff.

Frank S. King, Jr., City Legal Dept., S. McP. Glasgow, Jr., Nashville, for defendant.

## I.

SHRIVER, J. The parties will be referred to as plaintiff and defendant as they appeared in the Court below.

This is a suit for personal injuries sustained by the plaintiff when he fell from a truck owned and operated by the City of Nashville and upon which he was riding while employed as a member of a street patching crew.

It is agreed by counsel for both parties that the question for determination here is whether or not the trial Court was in error in granting the defendant's motion for a directed verdict made at the conclusion of all the evidence.

As is stated by counsel for the defendant in their well reasoned brief and argument, the defendant's motion for a directed verdict was based on the proposition that there was no evidence to go to the jury, and upon two propositions of law, to wit, (1) The Fellow Public Servant Rule and (2) the Doctrine of Assumption of Risk.

This motion was made and overruled at the conclusion of the plaintiff's proof but, when renewed at the conclusion of all the evidence, said motion was granted.

After a motion for a new trial was overruled an appeal in error to this Court was perfected.

## II.

Plaintiff, a man 56 years of age at the time of the injuries complained of, was employed by the City of Nashville in its street maintenance department and had been working on the job as a street building and repair man for approximately one year prior to the time of the accident in question here. He was a member of a crew of several men which was under the supervision of the defendant, John Gilbert, foreman of said crew.

While so employed, the plaintiff was seriously and permanently injured by being thrown from a truck which was owned and operated by the defendant, the City of Nashville, in its ministerial and proprietary capacity, and which truck was being driven by the defendant, John Gilbert.

After working on other jobs during the day, in the early afternoon of September 6, 1955, plaintiff and two other fellow workmen were ordered by the defendant Gilbert to load certain materials and tools onto this open

bed truck to be transported together with the workmen to a job of street repairing at another location in the City.

Under the rules laid down by the City and enforced by its foreman Gilbert, only one person other than the driver was allowed to ride in the cab of the truck, the other workmen being required to ride to and from the jobs on the back thereof. For this purpose a plank was provided by the defendant and was laid across the bed of the truck at the rear of the cab, thus providing a seat for said workmen to occupy while being transported to the place where they would resume their work.

It was averred by plaintiff, and there was evidence from which it might have been reasonably concluded, that the truck was so heavily loaded with materials, tools, dirt, etc., that it was necessary for the plaintiff to sit on the board and hold to the side of the truck with his feet out in front of him on sand, with which the bed at that point was filled, or to hang his feet over the side of the truck, which he did, bracing himself on a part of the truck bed while he held on to the edge of the truck bed with his hand.

It was not the practice of the foreman, John Gilbert, to tell the plaintiff or the other workmen where they were going when they left one job to go to another, but they were simply directed to get on the truck and Gilbert operated same, taking them wherever, under his authority, he saw fit to go in pursuance of the work for the City in which they were engaged.

Plaintiff alleged and testified that while he was sitting in the position above described the truck was proceeding

along 51st Ave. at about 40 miles per hour. The defendant Gilbert, who was driving, suddenly and without any warning whatsoever and without giving any signal that he intended to do so, turned said truck sharply to its right around a corner with the result that plaintiff was thrown off the truck, his body being hurled through the air and thrown violently against the hard surface of the roadway, thereby seriously and permanently injuring him.

Since there is substantial evidence in the record of negligence on the part of the driver of the vehicle from which plaintiff was thrown, and since there is also evidence in the record that could be regarded as showing negligence on the part of the City of Nashville with respect to the conditions and means of transportation furnished plaintiff in connection with his work, it follows that the case before us poses two questions, to wit;

(1) Was the foreman, John Gilbert, acting in the capacity of a fellow servant as he operated the truck from which the plaintiff was thrown and injured, or was he, as is insisted by counsel for plaintiff, a superior or vice principal? Of course, if he was acting as a fellow servant, then, under our cases, the employer, City of Nashville, could not be held liable for his negligence resulting in plaintiff's injuries, while, on the other hand, if he was acting as vice principal, the City of Nashville might be liable for his acts of negligence.

(2) Even if there be liability on the part of the defendant City of Nashville by reason of the negligence of its vice principal, is plaintiff's right of recovery barred because of contributory negligence, or under the "Assumption of Risk" doctrine?

### III.

First, as to whether Gilbert was a fellow servant or a vice principal.

The plaintiff testified that Gilbert was his boss and always drove the truck in which they went from one job to another. He also testified that Gilbert never did tell him where they were going. One morning soon after plaintiff began working for the City he asked Gilbert where they were going that day to which Gilbert replied, "You will find out when we get there". Plaintiff did not ask him that question again.

He testified that there was a rule that only one crew member was allowed to ride in the cab with the driver. However, he also testified that he preferred to ride on the back rather than in the cab.

On cross-examination Mr. Gilbert testified as follows:

"Q. Mr. Gilbert, you were driving the truck? A. Yes, sir.

"Q. And you had been working for the City seventeen years? A. Yes, sir, soon will be.

"Q. You were the foreman or boss? A. Yes, sir."

Mr. Gilbert further testified;

"Q. And you have a four man crew and you require the other two to ride in the back of the truck, don't you? A. Yes, sir." (Tr. p. 86)

\*     \*     \*     \*     \*     \*

"Q. And you don't tell your crew where you are going, you take charge of the truck and you drive them to it, don't you? A. That's right." (Tr. p. 87)

\* \* \* \* \* \*

"Q. So, when a man is riding up there on that big loaded truck he has no idea where you are going, or when you are going to turn, does he? A. No, he doesn't know." (Tr. p. 88)

C. B. Tarkington, another member of the crew and a fellow workman with the plaintiff at the time of the accident, testified; "I worked directly under Mr. Gilbert, he was my foreman".

Thus it is seen, the defendant Gilbert was boss or foreman of the crew. As to the extent of his authority, generally, over the other workmen, and as to the extent to which he was merely carrying out orders of some other superior, are matters about which there might be some difference of opinion, and different inferences might be drawn from the testimony as a whole.

As to the fact that the foreman, Gilbert, took complete charge of the truck on which the men, and the material for the carrying out of their work, were transported, there is no room for doubt. It seems clear from the evidence that the other members of the crew had no authority and exercised no will or judgment as to the operation of the truck on which they rode. Hence, in this regard, it appears that the members of the crew were not joint operators in this phrase of their employment with the City, but were subject to the will and to the dictation of the foreman.

. In the early case of Knoxville Iron Co. v. Dobson, 75 Tenn. 367, at pages 377, 378, the rule was announced as follows:

"We also hold to the doctrine that a servant who is in a position of authority over the other servants so as to compel their obedience, is not in the sense of the rule a fellow-servant in a common employment, but represents the master, who is in general liable for his negligence. These qualifications, while not conceded by all the authorities or even perhaps by the weight of authority, are recognized with us."

In East Tennessee & Western North Carolina R. R. Co. v. Collins, 85 Tenn. 227, 228, 1 S. W. 883, it was held:

"An engineer in charge of the train of a railroad company is the superior—not the fellow-servant—of a brakeman on the same train acting under his orders."

In Louisville & N. Railroad Co. v. Northington, 91 Tenn. 56, 17 S. W. 880, 16 L. R. A. 268, it was said:

"The proof makes out a prima facie case of negligence, where it is shown that plaintiff's intestate, while in the employ of the defendant railroad company working as a track hand under the immediate orders and supervision of a foreman or section-boss, sustained injuries by reason of being thrown against a lever of a moving hand-car, in consequence of a collision between a box negligently arranged on the hand-car by the foreman, and the platform, of a depot."

In Gann v. Nashville, C. & St. L. Railroad Co., 101 Tenn. 380, 47 S. W. 493, it was held:

"A superior who undertakes to perform, and puts himself in position to perform, the work of a fellow-servant, is, as to that particular work, a fellow-servant, and his negligence in such case is that of a fellow-servant, and not that of a vice principal, although he may be vice principal generally."

It was said, that the question is not one of rank. If the superintendent was acting at the time in the capacity of a fellow-servant, and his negligence caused the injury, the master is not liable.

However, it was further said (101 Tenn. at page 386, 47 S. W. at page 494):

"There is a conflict in the evidence as to whether this brake was in good and safe condition, and this is material, because, even if Cox was doing the work of a fellow-servant in handling the brake, and for his negligence in so doing the company would not be liable, still if he failed to provide safe and proper appliances, he would in that matter be doing the work of his principal, and for his negligence in not providing safe appliances the company would be responsible as was held in Louisville & N. Railroad Co. v. Northington, 91 Tenn. 56, 17 S. W. 880, [16 L. R. A. 268]."

At page 388 of 101 Tenn., at page 495 of 47 S. W. of said opinion it was said that the foreman failed to give any warning to the crew after he saw there was a risk and was, therefore, negligent, first in not providing safe and

proper appliances, and, next, in requiring the car to be run on, after he saw the risk and danger without notifying the crew of such danger.

In the case at bar it might be concluded from the evidence that the plaintiff was not provided a safe place to ride on the truck and that the foreman, who was operating the vehicle at the time, knew, or should have known, that there was risk and danger to plaintiff in turning the street corner, as he did. It was testified by plaintiff that he made this sudden turn without giving any warning or signal of his intention to do so, although this matter is in dispute since the foreman said he did give a signal.

Again in Chattanooga Electric Railway Co. v. Lawson, 101 Tenn. 406, 47 S. W. 489, it was held:

"A section boss or track foreman is a vice principal, under the decisions in this State, and the railroad company is answerable to a section hand under him for his negligence while acting officially.

"The negligence of a track foreman, who was acting as a motorman of an electric car, in ordering a track hand to board the car while in motion, and in failing to stop the car in time to save him from the peril thus incurred, is official, and not personal, and the railroad company is answerable therefor."

It is to be noted that the track foreman in the Chattanooga Electric Railway Co. case, supra, was acting as motorman on an electric car. In other words, he was operating it, and it was by his orders that the track hand attempted to board the car and was injured, and the Court held that this negligence was official and was

not personal and that the railroad company was responsible therefor.

In said opinion it was stated that plaintiff-in-error therein, through its counsel, made a learned and lengthy argument that a foreman did not represent the principal so as to charge it with responsibility, and cited many cases to that effect, however, the Court said that, in that respect, counsel was in error and stated;

"Whatever the doctrine may be elsewhere, it is clear that in this state a section boss or track foreman is a vice principal, and, for his negligence while acting officially for the master the master is answerable. This has been too long settled even to need statement, much less citation of cases."

In further commenting on the facts the Court said (101 Tenn. at page 411, 47 S. W. at page 490) :

"He was running by there without stopping before or after deceased caught the car, having given orders to board them while in motion. *The jury had the right to find that this was negligence, and that it was official.*"

A leading case in this State is Ohio River & C. Railroad v. Edwards, 111 Tenn. 31, 76 S. W. 897. In that case it was said:

"The mere fact that one is called 'foreman' does not of itself indicate that he is a vice principal. The question is to be determined in every case not by words and names, but by the nature and extent of the powers conferred by the master, and accepted and exercised by the superior servant."

"The most general test that a servant is a vice principal is that he so far stands in the place of his master as to be charged in the particular matter with the performance of a duty towards the inferior servant which, under the law, the master owes to such servant, as furnishing tools, or machinery and appliances, or giving orders with respect to work to be done by the subordinate. * * *

"A test frequently stated in our cases that a servant is a vice principal is that he has authority to give orders, as a vice principal, to the subordinate servant, in directing him when, where, and how to work."

Another leading case dealing with this question is Allen v. Chamberlain, 134 Tenn. 438, 183 S. W. 1034, 1035, where it was held that a railroad section foreman is a superior servant to the laborers in his gang and is a vice principal. In this connection it was said:

"It is well settled in Tennessee that a railroad section foreman is a superior servant to the laborers in his gang; that he is vice principal, and the alter ego of the master respecting these laborers. Louisville & N. Railroad Co. v. Northington, 91 Tenn. 56, 17 S. W. 880, 16 L. R. A. 268; Chattanooga Electric Ry. Co. v. Lawson, 101 Tenn. 406, 47 S. W. 489; Gann v. Nashville, C. & St. L. Railroad Co., 101 Tenn. 380, 47 S. W. 493, 70 Am. St. Rep. 687; Ohio River Railroad Co. v. Edwards, 111 Tenn. 31, 76 S. W. 897."

At page 441 of 134 Tenn., at page 1032 of 183 S. W. it was said:

"It should be stated in this connection that this court has at no time, as seems to be intimated on this record, departed from the rule laid down in Gann v. Nashville, C. & St. L. Railroad Co., supra, but, on the contrary, that case was approved in Ohio River & C. Railroad v. Edwards, supra, and has been followed in several unreported cases. While Gann v. Nashville, C. & St. L. Railroad Co. is not in harmony with cases in some other jurisdictions, it has always been adhered to by this court, and is in accord with the weight of authority. See note under Tills v. Great Northern Railroad Co. in [50 Wash. 536, 97 P. 737,] 20 L. R. A., N. S., 434."

At page 443 of 134 Tenn., at page 1036 of 183 S. W. it was held:

"To determine whether a particular act is that of a fellow servant or vice principal, this court has declared:

" 'The most general test is that, in order to be a vice principal, a servant must so far stand in the place of his master as to be charged in the particular matter with the performance of a duty towards the inferior which, under the law, the master owes to such servant.' Ohio River & C. Railroad Co. v. Edwards, 111 Tenn. 31, 43, 76 S. W. 897, 899."

However, in the opinion it was pointed out the foreman testified that he was not especially required to use the brakes on the hand car, that any of the hands on the car might have used them, but that, if he had been directed to handle the brake himself, the case would still fall under Louisville & N. Railroad Co. v. Martin,

87 Tenn. 398, 10 S. W. 772, 3 L. R. A. 282, and Hopkins v. Nashville, C. & St. L. Railroad, 96 Tenn. 409, 34 S. W. 1029, 32 L. R. A. 354, where, in the absence of conductors, the engineers were left in charge of the trains, it being held in both cases that the masters were not liable for the negligent acts of the engineers causing the injuries to brakemen, *because it was shown, as a fact, that the engineers did not assume any control over the brakemen* and the injuries were caused by the negligent performance of service duties wherein they were operating as fellow employees.

Counsel for defendants herein rely heavily on Allen v. Chamberlain, supra, but we think said case is distinguishable from the case at bar in several particulars. In the first place, it is shown in Allen v. Chamberlain that the foreman, together with his crew, was operating the hand car, the crew members using the handlebars with which to propel it, while the foreman was operating the brakes, hence, as in the case of the engineers and brakemen above referred to, they were jointly operating the instrument as fellow workmen, whereas, in the case at bar, the foreman assumed complete control of the truck on which plaintiff was riding. He always drove same, according to the proof, and did not consult his crew members about where they were going, when they would stop, or any other detail concerning the operation.

In the instant case the operation in which plaintiff was engaged was the work of filling up or repairing places in the street. He had no part in the operation of the vehicle that moved the material and men from job to job.

Another distinction that is noteworthy with regard to the Chamberlain case, supra, is that, in the Chamberlain

case, the foreman and the crew were directed by an official of the company, superior in rank to the foreman, to proceed to the scene of a wreck on the railroad, and they were carrying out these orders with the foreman on the hand car helping the crew to operate it when the accident occurred. Hence, he was held to be a fellow servant in that instance.

In the case at bar, there is nothing in the record to indicate that there was any direct order from a superior to proceed to place on Tennessee Avenue where, apparently, this crew of men were destined to go. The decision as to when to get on the truck and as to the route to be followed, the speed at which it was to be driven, the entire operation of the truck and its destination were in the hands of the foreman, and we are of opinion that, under such circumstances, he cannot be regarded as a mere fellow servant with the plaintiff but was a vice principal.

## IV.

Coming now to the application of the doctrine of the "assumption of risk" and contributory negligence, we find that plaintiff testified that, as they rode along 51st Avenue, the speed of the truck on which he was riding was about 40 miles per hour. As they came to the intersection of 51st and Tennessee Avenues, the driver, Gilbert, suddenly turned to his right without giving any signal or warning, and this threw the plaintiff off onto the street and injured him. He testified that he had no difficulty in staying on until the sudden turn was made. He stated that he was holding on to the bed of the truck and, as he started to fall, he held so tight that it tore the skin off his hand. He further testified that the driver

did not slow down as he approached the intersection and never did change his forward speed until one of his companions shouted to Mr. Gilbert to stop, saying, "Stop, you threw Louie off".

At another point, plaintiff testified that the bed of the truck was filled with sand underneath the plank that he sat on so that he put his feet over the side of the bed of the truck.

Defendant Gilbert testified (Tr. p. 86):

"Q. Now then, it is also the rule that only one man can ride in the cab of that truck with you, isn't it? A. Yes.

"Q. And you enforce that rule, don't you? A. Yes, sir.

"Q. And you have a four-man crew and you require the other two to ride in the back of the truck, don't you? A. Yes, sir.

"Q. You carry out that rule of the City that only one can ride in the cab with you, and the other members of the crew have got to ride on the back of that truck. That is a rule handed down to you by the City and you enforce it as foreman, and were at this time, weren't you. A. Yes, sir."

Again he testified (Tr. p. 88):

"Q. So, when a man is riding up there on that big loaded truck he has no idea where you are going, or when you're going to turn, does he? A. No, he doesn't know."

As is said by some text writers, few subjects of the law have a more obscure and complicated terminology

than that appertaining to the doctrine of assumption of risk. Even the most casual investigation discloses a perplexing and often quite unintelligible array of propositions.

It has been said that the gist of the employer's defense, whether termed "Contributory Negligence". or "Assumption of Risk", consists in conduct which common experience or the special knowledge of the actor shows to be so likely to produce the result complained of under the circumstances known to the actor, that he is held answerable for that result. Under a number of authorities it is said that, inasmuch as the fundamentals of assumption of risk and contributory negligence are the same, no distinction properly may be drawn between the two in respect of pleading and proof.

In 18 R. C. L. 676 under the title "Risk Assumed, Ordinary Perils of Employment", it is said:

"The dangers in respect of which there can be no recovery for injuries by virtue of the doctrine of assumption of risk include, but according to the generally accepted statement, do not extend beyond the 'ordinary' risks of the employment or such as are 'incident' thereto."

Again at page 677 it is said:

"It is generally asserted without qualification that the employee does not assume the risk of the employer's negligence * * *. It is reasonably certain, however, that what is meant is that the employee is not barred of recovery for injuries due to perils of which he has no knowledge and appreciation. It must constantly be borne in mind that liability is to

be determined with a view to the comparative knowledge of the parties. Primarily, the employer is bound to provide for the safety of his employees, and the employees have a right to rely upon the performance of this duty. They are not barred of recovery for injuries—or in the terminology of the present topic—they do not 'assume the risk'—occasioned by the failure of the employer to perform his primary duty, unless they have actual or constructive knowledge of the dereliction and of the perils arising therefrom, and continue in the employment without protest or complaint. The principle, it will be noted, is that of contributory negligence.''

Under a long line of cases cited in 18 R. C. L. p. 685, it is held: ''Whether in any particular case the employee did have knowledge of the peril is a question of fact for the jury's determination.''

And again we find much authority for the proposition that while the employee is bound to exercise vigilance to discover the perils by which he is menaced, he is entitled to proceed on the assumption that the employer will fullfil his obligation.

At page 690 it is said:

''One who employs others in a business or industry that is known to be dangerous is charged with the exercise of care reasonably commensurate with the perils to which his employees may be exposed in the discharge of their duties, and he impliedly contracts with each employee that he will fullfil his obligation. The employee may rely upon the performance of this duty.''

In Moore v. Dublin Cotton Mills, 127 Ga. 609, 56 S. E. 839, 842, 10 L. R. A., N. S., 772, it was said:

"The question at last in each case is whether the person charged as vice principal was performing towards the injured servant a duty which the master owed to that servant, and which the servant had a right to expect would be discharged by the master, and which the master could not avoid or shirk by placing the responsibility upon another person."

In the case of Gann v. Nashville, C. & St. L. Railroad, 101 Tenn. 380, 47 S. W. 493, it was pointed out that there was no evidence in that case that the foreman was in the habit of using his feet for a coupling appliance to hold the cars together, or that the crew was aware of such practice, which, had they known, they might be held to have assumed the risk if they did not object. It may be observed that, in the case at bar, there is no evidence in the record that the foreman, Gilbert, driver of the truck, ever, at any time before, negligently drove around a corner at a dangerous speed, or at such speed as to throw a workman off the truck, or that it might reasonably have been anticipated that he would do so, although it was testified that he always drove the truck, and the plaintiff had been working there for about a year with him.

Thus, it may be observed that, even if the plaintiff assumed the ordinary risk of riding in the position in which he was found on the day of the accident, nevertheless, it does not necessarily follow that he assumed the risk of negligent driving such as the jury might have found from the evidence.

Again, in Chattanooga Electric Railway Co. v. Lawson, supra, 101 Tenn. 406, 47 S. W. 489, it was held:

(Syl. 5) "Whether or not the section hand was guilty of contributory negligence, in attempting, in pursuance of the direction of the track foreman, a vice principal, to board an electric car moving at the rate of three or four miles an hour, that precludes recovery for his death, caused by falling from the car and being run over by it, is for the jury to determine."

And on page 411 of 101 Tenn., on page 491 of 47 S. W. of the opinion the court discussed the duty of the foreman to control the cars and observed that the jury had the right to find that his conduct constituted negligence and that it was official as distinguished from personal.

Since plaintiff's experience, the conditions under which he was required to work in order to hold his job, the arrangements for his transportation and the facts and circumstances in connection therewith, must all be taken into account in deciding the questions of assumption of risk and contributory negligence, we are persuaded to believe that these questions should have been submitted to the jury for its determination.

It follows that the judgment of the trial Court is reversed and the cause is remanded for a new trial.

The costs of the appeal will be paid by the defendant-in-error, the City of Nashville, and its bond.

Felts and Hickerson, JJ., concur.

Reversed and remanded.